1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SIDHU LAW, APC**
Peter Sidhu (SBN 355013)
peter@sidhulawapc.com
1601 Carmen Drive Suite 110A
Camarillo, California 93010
Tel: (805) 222-4761

*Attorney for Plaintiff Kevin Chaffin*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN D. CHAFFIN, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WEST PUBLISHING CORPORATION, a Minnesota corporation; and THOMSON REUTERS ENTERPRISE CENTRE GmbH, a Swiss limited liability company.<br><br>　　　　Defendants. | Case No.: [To Be Assigned]<br><br>**COMPLAINT FOR:**<br><br>**1. FRAUDULENT INDUCEMENT – MAY 12, 2025 UPGRADE AGREEMENT**<br><br>**2. NEGLIGENT MISREPRESENTATION**<br><br>**3. BREACH OF CONTRACT**<br><br>**4. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**5. VIOLATION OF ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT – Cal. Civil Code §1788 et seq.**<br><br>**6. VIOLATION OF UNFAIR COMPETITION LAW – Cal. Bus. & Prof. Code §17200 et seq.**<br><br>**7. PROMISSORY ESTOPPEL**<br><br>**8. DECLARATORY RELIEF**<br><br>**9. PRELIMINARY AND PERMANENT INJUNCTION**<br><br>**[Jury Trial Demand]** |

1

Plaintiff Kevin D. Chaffin ("Plaintiff"), by and through his attorneys, alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action to stop Defendants' ongoing billing, suspension, and collection practices, which resulted in termination of Plaintiff's Westlaw access during active litigation and have forced Plaintiff to incur substantial costs to replace essential legal research services.

## THE PARTIES

2.     Plaintiff Kevin D. Chaffin is an individual and attorney residing in Ventura County, California, operating Chaffin Law, a small legal practice focused on arbitration and trial work. As a solo practitioner, Plaintiff lacks the staffing and financial buffers available to large law firms and depends on reliable, accurately billed legal research services to competently represent clients.

3.     Defendant West Publishing Corporation ("West Publishing") is a Minnesota corporation headquartered in Eagan, Minnesota, that provides Westlaw legal research services to attorneys, including in California and to Plaintiff.

4.     Defendant Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") is a Swiss limited liability company headquartered in Zug, Switzerland, that, on information and belief, participates in the provision, data infrastructure, billing, account administration, and/or enforcement functions associated with Westlaw services provided to Plaintiff in California.

5.     West Publishing is a wholly owned subsidiary within the Thomson Reuters Corporation family, which has substantial resources and market presence in legal information services. This disparity in size and leverage is relevant to the parties' dealings and to the coercive effect of Defendants' later conduct alleged herein.

## VENUE AND JURISDICTION

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred

2
COMPLAINT

in this District. Those events include Defendants' solicitation of Plaintiff in California; Defendants' representations concerning contract terms, billing, and account status directed to Plaintiff in California; Defendants' provision, suspension, and termination of Westlaw services used by Plaintiff in California; and the resulting harm to Plaintiff's California-based legal practice. Plaintiff further alleges that Defendants produced multiple, materially inconsistent versions of the purported governing agreements, including conflicting term lengths and incomplete electronic execution records, and that Plaintiff has plausibly alleged fraudulent inducement and seeks rescission or reformation of those agreements. Under these circumstances, Defendants' ability to enforce any purported forum-selection provision is disputed, and venue is proper in this District.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Kevin D. Chaffin is a citizen of California. Defendant West Publishing Corporation is a corporation organized under the laws of Minnesota, with its principal place of business in Minnesota. Defendant Thomson Reuters Enterprise Centre GmbH is a Swiss entity organized under the laws of Switzerland, with its principal place of business in Switzerland. Plaintiff is informed and believes, and on that basis alleges, that no Defendant is a citizen of California for diversity purposes. Plaintiff will amend these jurisdictional allegations if necessary after jurisdictional discovery or further confirmation of Defendant Thomson Reuters Enterprise Centre GmbH's citizenship status under applicable federal law.

## GENERAL ALLEGATIONS

## I. BACKGROUND

8.      Plaintiff alleges that Defendants engaged in a continuing course of wrongful conduct, including misrepresentations made to induce Plaintiff to enter and remain in long-term contractual commitments, followed by disputed billing practices,

service suspension or termination, and collection threats regarding amounts Plaintiff contends were not owed.

9. Prior to November 17, 2023, Plaintiff engaged in discussions with Defendants' sales representative, Mark Michel, regarding a potential Westlaw subscription. During those discussions, Michel represented that if Plaintiff entered into a Westlaw subscription and later joined a law firm that already maintained its own legal research service, Plaintiff would be able to cancel the Westlaw subscription without penalty.

10. This representation was material to Plaintiff. Plaintiff explained to Michel that, as a solo practitioner, his professional circumstances could change and that he could not risk being locked into a non-cancellable multi-year obligation.

11. Relying on Michel's representation, Plaintiff entered into a Westlaw subscription agreement dated November 17, 2023, under Order ID Q-07627452, for a 36-month term at a monthly cost of $384.80. The written contract did not contain the promised penalty-free cancellation provision, and Defendants later refused to honor the representation made by their own sales representative.

12. A true and correct copy of the signed, merged November 17, 2023 contract, obtained by Plaintiff via DocuSign, is attached as Exhibit A, along with a December 20, 2025 printout of each internet link contained in the agreement.

## II. OPPRESSIVE BUSINESS PRACTICES

13. On September 29, 2024, Plaintiff joined a new law firm that already used Lexis for legal research. Plaintiff joined the firm while maintaining a small number of cases of his own in a separate practice. This change in circumstances triggered the precise cancellation scenario that Michel had expressly represented would permit Plaintiff to exit the Westlaw contract without penalty.

14. Despite this, Defendants continued billing Plaintiff and demanding payment, placing Plaintiff in an ongoing dispute and effectively forcing him to maintain the service to avoid financial and professional consequences.

15.     After joining the firm, Plaintiff informed Michel of his new firm affiliation and reiterated that he no longer required Westlaw because the firm already had legal research coverage. Plaintiff and Michel discussed that Plaintiff might temporarily keep Westlaw active to attempt to demonstrate its superiority to Lexis to the new firm, which would benefit Defendants if the firm switched platforms. These discussions occurred against the backdrop of Michel's earlier promise that Plaintiff was not locked into the contract once he joined a firm with existing legal research.

16.     By May 2025, billing disputes between Plaintiff and Defendants remained unresolved. On May 4, 2025, Plaintiff contacted Defendants to inquire about upgrading his Westlaw access to include Nevada law and employment law content, while keeping the account independent from any firm affiliation. Plaintiff explained that he had active matters of his own, separate from his work with the other law firm, including a Nevada case, and that he required robust Nevada legal research capabilities.

17.     On May 5, 2025, during a telephone call, Defendants' sales representative Mark Michel represented to Plaintiff that any upgrade would apply only for the remaining approximately eighteen months of the original 36-month term and would not reset the contract to a new three-year commitment. Michel further represented that all past-due balances would be credited and waived if Plaintiff agreed to the upgrade.

18.     These representations were made during the May 5, 2025 call and were repeated in an email chain on May 6, 2025. During the May 5 call, Plaintiff specifically informed Michel that the purpose of the upgrade was to support a Nevada case requiring top-tier Nevada legal research, and this contemplated use was expressly included in the discussions surrounding the upgrade. Plaintiff relied on Michel's representations regarding term length, credit waivers, and intended use.

19.     Relying on those representations, Plaintiff executed an upgrade agreement dated May 12, 2025, under Order ID Q-09861007, at a monthly cost of

$894.60. Contrary to Defendants' promises, the upgrade imposed a new 24-month term, rather than limiting the obligation to the remaining approximately eighteen months of the original 36-month agreement. A copy of the May 12, 2025 upgraded 24-month agreement is attached as Exhibit B, along with a December 20, 2025 printout of each internet link contained in the agreement.

20.    In October 2025, Plaintiff requested a copy of the May 12, 2025 agreement. Defendants provided Plaintiff with a version indicating that the agreement was 36 months in length, despite the date-stamped 24-month version attached as Exhibit B. Defendants' 36-month version contains incomplete and inadequate purported digital confirmation documentation and is attached as Exhibit C.

21.    Immediately after upgrading, Plaintiff sought and obtained pro hac vice admission in Nevada State District Court for Clark County, associating with local Nevada counsel and proceeding with the understanding that Westlaw access would support the litigation.

**III. DEFENDANTS' POST-DISPUTE COMMUNICATIONS AND ESCALATION OF COLLECTION PRESSURE**

22.    On July 22, 2025, Plaintiff received notice that his Westlaw account was being suspended for alleged non-payment. Plaintiff questioned the suspension, and Mark Michel assured him that the matter would be cleared up and that past charges would be corrected.

23.    On August 4, 2025, Lizeth Perez, an Operations & Technology representative for Defendants, emailed Plaintiff stating: "This is to confirm that your account is fully up to date and there are no payments due at this time." This communication expressly confirmed a zero balance.

24.    Despite this confirmation, on August 21, 2025, Defendants issued another suspension notice from Mark Angelo Asuncion, demanding immediate payment and ignoring the prior zero-balance confirmation. Plaintiff experienced loss of access and operational disruption as a result.

25.    On August 29, 2025, Michel emailed Defendants' accounts receivable team acknowledging that credits were due to correct the invoices and instructing that services should not be suspended. This communication occurred after Plaintiff reported ongoing login and access issues following the suspension.

26.    Despite these internal acknowledgments, on September 16, 2025, Abby Tate, a Regional Sales Manager, contacted Plaintiff and continued pressing account issues. Plaintiff had a brief call with Tate on September 17, 2025, followed by a longer call on September 18, 2025.

27.    During these communications, Tate attempted to dismiss Lizeth Perez's August 4 zero-balance confirmation as a "lost in translation" issue and suggested it was attributable to Perez being an overseas, non-native English speaker, notwithstanding that Perez was acting as Defendants' Operations & Technology representative. Tate also disclaimed responsibility for Michel's representations by asserting that he had exceeded his authority.

28.    On September 25, 2025, Defendants terminated Plaintiff's Westlaw account for alleged non-payment and demanded $4,386.64 in purported past-due charges, while threatening collection, despite having previously admitted that no balance was owed.

29.    As a result of the termination, Plaintiff lost access to critical legal research tools necessary for his Nevada case, forcing him to continue associating with local Nevada counsel and to outsource legal research at significant cost, inconvenience, and disruption. These damages are ongoing.

30.    On September 26, 2025, Plaintiff received formal notice confirming termination of the account. Plaintiff issued demands to reinstate the account on September 26, 2025, and again on September 28, 2025.

31.    On December 28, 2025, Defendants emailed Plaintiff an updated Account Statement indicating $5,617.64 past due for Account No. 1005861663, directly contradicting the August 4, 2025 email from Defendants' Operations &

Technology representative Lizeth Perez confirming that Plaintiff's account was "fully up to date" with "no payments due."

32.    Plaintiff alleges that Defendants' conduct constitutes a continuous pattern of fraudulent inducement, negligent misrepresentation, billing manipulation, service suspension, termination, and coercive collection practices, carried out by a massive corporate conglomerate against a solo practitioner with limited ability to resist prolonged disputes.

33.    Plaintiff pleads alternative theories of recovery and does not seek duplicative damages for the same alleged harm.

## FIRST CAUSE OF ACTION

## FRAUDULENT INDUCEMENT – MAY 12, 2025 UPGRADE AGREEMENT

### *(Against All Defendants)*

34.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

35.    On May 5, 2025, during a telephone call, and again on May 6, 2025, in a follow-up email chain, Defendants, through their authorized representative Mark Michel, made specific, affirmative representations of material fact to Plaintiff for the purpose of inducing him to enter into a new Westlaw subscription upgrade agreement.

36.    Specifically, Defendants represented to Plaintiff that:

a. The proposed upgrade would apply only to the remaining approximately eighteen (18) months of Plaintiff's existing subscription term and would not reset the contract to a new long-term commitment; and

b. All past-due balances and disputed charges would be credited and waived if Plaintiff agreed to the upgrade.

37.    These representations were made in direct response to Plaintiff's expressed concerns regarding prior billing disputes, repeated past-due notices, and the financial consequences of being locked into a new long-term contractual obligation.

COMPLAINT

38.    Defendants further knew that Plaintiff required the upgraded service for a specific, contemplated purpose—namely, an active Nevada litigation matter requiring top-tier Nevada legal research resources—and that Plaintiff's decision to proceed with the upgrade was contingent upon the representations made regarding contract term length and waiver of past-due balances.

39.    In reliance on Defendants' representations, Plaintiff executed the upgrade agreement dated May 12, 2025 (Order ID Q-09861007), at a monthly cost of $894.60.

40.    Contrary to Defendants' representations, the upgrade agreement was documented as imposing a new twenty-four (24) month term, rather than limiting Plaintiff's obligation to the remaining approximately eighteen months of the original subscription term.

41.    Thereafter, and despite Defendants' prior representations, Defendants continued to assert delinquency, issued suspension notices, and ultimately terminated Plaintiff's Westlaw account based on amounts Defendants themselves had previously acknowledged were not owed.

42.    On July 22, 2025, Defendants issued a written suspension notice for alleged non-payment. Plaintiff immediately objected and raised the prior representations made by Michel regarding waiver of past-due balances.

43.    On August 4, 2025, Defendants, through their Operations & Technology representative Lizeth Perez, affirmatively confirmed in writing that Plaintiff's account was "fully up to date" and that there were "no payments due at this time."

44.    Despite this written confirmation, Defendants resumed billing demands, disregarded the zero-balance confirmation, and ultimately terminated Plaintiff's account. Later, Defendants provided Plaintiff with a purported version of the May 12, 2025 upgrade agreement recharacterizing the obligation as a thirty-six (36) month term, further demonstrating Defendants' inconsistent and deceptive handling of the upgrade agreement and billing obligations.

45.    Defendants knew, or recklessly disregarded, that their representations regarding contract term length and waiver of past-due balances were false at the time they were made, or were made without any intent to perform, and were intended to induce Plaintiff's reliance and secure execution of the May 12, 2025 upgrade agreement.

46.    Plaintiff justifiably relied on Defendants' representations in executing the upgrade agreement. The representations were made by Defendants' authorized representative, were specific and unequivocal, and directly addressed Plaintiff's stated concerns regarding billing exposure, contract duration, and continued access to necessary legal research.

47.    As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered substantial damages, including but not limited to increased contractual obligations, loss of Westlaw access, outsourced legal research expenses, disruption of his Nevada litigation, and ongoing business harm.

48.    Defendants' conduct was intentional, malicious, oppressive, and fraudulent, particularly given Defendants' superior bargaining power, exclusive control over billing and access to services, and subsequent reversal of their own written confirmations.

49.    Plaintiff is therefore entitled to all available relief, including rescission, restitution, compensatory damages, punitive damages, declaratory relief, and injunctive relief, as set forth in the Prayer for Relief.

### SECOND CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION – COUNT ONE
### *(Against All Defendants)*

50.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

51.    On May 5, 2025, during a telephone call, and on May 6, 2025, in a follow-up email chain, Defendants, through their authorized representative Mark

Michel, made representations of material fact to Plaintiff in connection with a proposed upgrade to Plaintiff's Westlaw subscription.

52.    Specifically, Defendants represented that the proposed upgrade would apply only to the remaining approximately eighteen (18) months of Plaintiff's existing subscription term and would not impose a new long-term contractual obligation, and that all past-due balances and disputed charges would be waived if Plaintiff agreed to the upgrade.

53.    These representations were false. In fact, the upgrade agreement was documented as imposing a new long-term contractual commitment, and Defendants later refused to waive the purported past-due amounts, instead continuing to assert delinquency, issuing suspension notices, and ultimately terminating Plaintiff's account.

54.    At the time the representations were made, Defendants lacked reasonable grounds for believing them to be true, or made them without reasonable care as to their accuracy. Defendants failed to exercise reasonable care or competence in communicating accurate information concerning the contract term, billing status, and financial consequences of the upgrade.

55.    Defendants intended, and reasonably should have expected, that Plaintiff would rely on these representations in deciding whether to execute the May 12, 2025 upgrade agreement.

56.    Plaintiff justifiably relied on Defendants' representations in executing the upgrade agreement. The representations were made by Defendants' authorized representative, were specific and unambiguous, and directly addressed Plaintiff's stated concerns regarding prior billing disputes and the risk of being locked into an extended contractual obligation.

57.    Defendants further knew that Plaintiff required the upgraded Westlaw service for a specific and contemplated purpose—namely, the prosecution of an active Nevada litigation matter requiring comprehensive Nevada legal research—and that

Plaintiff's decision to upgrade was made in reliance on Defendants' assurances regarding term length, billing resolution, and continued access.

58.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff suffered substantial damages, including increased contractual payment obligations, loss of access to essential legal research services, costs incurred in outsourcing legal research, disruption to Plaintiff's Nevada litigation, and ongoing business and professional harm resulting from the need to associate local Nevada counsel.

59.    Plaintiff's damages were a foreseeable consequence of Defendants' misrepresentations, particularly given Defendants' knowledge of Plaintiff's reliance on uninterrupted access to Westlaw for active litigation and Defendants' superior control over billing, account status, and service access.

60.    Plaintiff is therefore entitled to all available relief, including compensatory damages, consequential damages, restitution, declaratory relief, and injunctive relief, as set forth in the Prayer for Relief.

## NEGLIGENT MISREPRESENTATION – COUNT TWO
### *(Against All Defendants)*

61.    Defendants made false representations of material fact to Plaintiff concerning both the November 17, 2023 Westlaw subscription and the May 12, 2025 upgrade agreement.

62.    These representations included assurances that Plaintiff could cancel the 2023 subscription without penalty if he later joined a firm with existing legal research coverage, and that the 2025 upgrade would apply only to the remaining portion of the existing term and would include waiver of all past-due balances and disputed charges.

63.    These representations were false. Defendants later refused to honor the promised cancellation flexibility, imposed new long-term contractual obligations inconsistent with their representations, continued to assert delinquency despite

internal acknowledgments of a zero balance, issued suspension notices, and ultimately terminated Plaintiff's account.

64.    At the time the representations were made, Defendants had no reasonable grounds for believing them to be true, or made them without reasonable care as to their accuracy. Defendants' subsequent reversals, billing actions, suspensions, and termination—despite internal confirmations that no balance was owed—demonstrate Defendants' lack of reasonable basis for the representations when made.

65.    Defendants made these representations with the intent to induce Plaintiff's reliance and to secure Plaintiff's entry into and continuation of contractual relationships with Defendants.

66.    Plaintiff justifiably relied on Defendants' representations, which were made by Defendants' authorized representatives, were specific and unequivocal, and directly addressed Plaintiff's expressed concerns regarding contractual flexibility, billing exposure, and continued access to essential legal research services.

67.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff suffered substantial damages, including payments made under the contracts, loss of access to Westlaw services, costs incurred in outsourcing legal research, disruption to Plaintiff's legal practice and litigation activities, and related business and professional harm.

Defendants' negligence was a substantial factor in causing Plaintiff's damages.

68.    Plaintiff is therefore entitled to all available relief, including compensatory and consequential damages, restitution, declaratory relief, and injunctive relief, as set forth in the Prayer for Relief.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
### *(Against All Defendants)*

69.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

70.     Plaintiff pleads this cause of action in the alternative to Plaintiff's claims for fraudulent inducement, rescission, and reformation. To the extent the Court determines that the November 17, 2023 subscription agreement and/or the May 12, 2025 upgrade agreement are valid and enforceable contracts, Defendants breached those agreements as alleged herein.

71.     The November 17, 2023 Westlaw subscription agreement and the May 12, 2025 upgrade agreement constituted valid and enforceable contracts between Plaintiff and Defendants.

72.     Plaintiff fully performed, or substantially performed, all obligations required of him under the contracts, including making required payments and complying with Defendants' account requirements, except to the extent performance was excused by Defendants' own breaches.

73.     Defendants breached the contracts by, among other things, failing to honor promised credits and waiver of past-due amounts, wrongfully suspending and terminating Plaintiff's Westlaw access despite confirming that Plaintiff's account carried a zero balance, and demanding payment of amounts Defendants themselves had previously admitted were not owed.

74.     Defendants further breached the contracts by exercising contractual discretion in bad faith, applying billing and enforcement provisions inconsistently, and denying Plaintiff access to services for which he had contracted and paid.

75.     As a direct and proximate result of Defendants' breaches, Plaintiff suffered substantial damages, including loss of access to essential legal research services, costs incurred in outsourcing legal research, disruption to Plaintiff's legal practice and litigation activities, and related business and professional harm.

76.     Plaintiff seeks all available remedies for Defendants' breach, including compensatory damages and, in the alternative, specific performance, including reinstatement of Plaintiff's Westlaw service on non-discriminatory terms and

extension of applicable discounts, credits, and promotional terms, as set forth in the Prayer for Relief.

**FOURTH CAUSE OF ACTION**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

***(Against All Defendants)***

77.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

78.   Plaintiff pleads this cause of action in the alternative to Plaintiff's claims for fraudulent inducement, rescission, and reformation. To the extent the Court determines that valid and enforceable contracts existed between Plaintiff and Defendants, including the November 17, 2023 Westlaw subscription agreement and the May 12, 2025 upgrade agreement, each contract included an implied covenant of good faith and fair dealing requiring Defendants to act honestly, fairly, and in good faith so as not to deprive Plaintiff of the benefits of the agreements.

79.   Defendants breached the implied covenant of good faith and fair dealing by engaging in bad-faith conduct designed to frustrate Plaintiff's contractual expectations, including reversing a written zero-balance confirmation, asserting and reasserting non-existent debts, wrongfully suspending and terminating Plaintiff's Westlaw access, and using their exclusive control over billing and service access to coerce payment of amounts Defendants had previously acknowledged were not owed.

80.   Defendants further acted in bad faith by disavowing and undermining the representations and confirmations of their own authorized employees, attempting to evade responsibility for their billing and enforcement actions, and applying contractual provisions in an arbitrary, inconsistent, and oppressive manner.

81.   This conduct was malicious and oppressive and directly undermined Plaintiff's reasonable contractual expectations of reliable access to legal research services, accurate billing, and fair treatment under the agreements.

82.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff suffered substantial damages, including loss of access to essential legal research services, costs incurred in outsourcing legal research, disruption to Plaintiff's legal practice and litigation activities, and related business and professional harm.

83.    To the extent Defendants' conduct constitutes fraudulent, oppressive, or malicious tortious conduct, as alleged herein, Plaintiff seeks punitive damages in addition to compensatory and consequential damages, as allowed by law and as set forth in the Prayer for Relief.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

### *(Cal. Civ. Code § 1788 et seq.)*

### *(Against All Defendants)*

84.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

85.    Plaintiff is a "debtor" within the meaning of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and Defendants are "debt collectors" as defined by the Act, in that they regularly engage in the collection of alleged debts arising from the provision of services and attempted to collect such debts directly from Plaintiff.

86.    Defendants attempted to collect alleged debts claimed to be due in connection with Plaintiff's Westlaw account through payment demands, suspension notices, and termination notices, despite Defendants' prior written confirmation that Plaintiff's account was "fully up to date" and that "no payments were due."

87.    In the alternative, and to the extent required to establish coverage under the Rosenthal Act, Plaintiff alleges that Defendants' collection conduct was directed at Plaintiff personally and sought payment from Plaintiff as an individual, not through

1  any institutional employer or firm billing structure, and that Defendants treated the
2  alleged obligation as a personal debt for collection purposes.

3    88.    Defendants engaged in unlawful debt collection practices prohibited by
4  the Rosenthal Act, including falsely representing the character, amount, and legal
5  status of the alleged debt, attempting to collect amounts not owed, and continuing
6  collection activity after Plaintiff disputed the amounts and after Defendants' own
7  communications confirmed that no payment was due.

8    89.    Defendants' conduct violated, among other provisions, California Civil
9  Code § 1788.13(e), which prohibits false representations regarding the character or
10  amount of a debt, and California Civil Code § 1788.17, which incorporates the
11  prohibitions of the federal Fair Debt Collection Practices Act against deceptive,
12  unfair, and misleading debt collection practices.

13    90.    The violations were willful and knowing, as evidenced by the direct
14  contradiction between Defendants' written zero-balance confirmation and their
15  subsequent suspension of service, termination of Plaintiff's account, and renewed
16  demands for payment.

17    91.    Defendants further employed suspension and termination of essential
18  legal research services as coercive collection tactics, leveraging their exclusive
19  control over access to Westlaw in an effort to pressure Plaintiff into paying non-
20  existent or disputed debts.

21    92.    As a direct and proximate result of Defendants' unlawful debt collection
22  practices, Plaintiff suffered actual damages, including loss of service, economic harm,
23  out-of-pocket expenses for outsourced legal research, disruption to Plaintiff's legal
24  practice and litigation activities, and emotional distress.

25    93.    Plaintiff is entitled to all remedies available under the Rosenthal Act,
26  including statutory damages of up to $1,000 per violation, actual damages, attorneys'
27  fees, and costs pursuant to California Civil Code § 1788.30, as set forth in the Prayer
28  for Relief.

# SIXTH CAUSE OF ACTION
# VIOLATION OF UNFAIR COMPETITION LAW
### *(Cal. Bus. & Prof. Code § 17200 et seq.)*
### *(Against All Defendants)*

94.    Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

95.    Defendants engaged in unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200, et seq., including, but not limited to, misrepresentations regarding contract terms and billing, reversal of confirmed account credits, wrongful suspension and termination of service, and threats to collect non-existent or disputed debts.

96.    Defendants' conduct was unlawful in that it violated the Rosenthal Fair Debt Collection Practices Act and common-law prohibitions against fraud, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing, each of which independently constitutes a predicate violation under the Unfair Competition Law.

97.    Defendants' conduct was unfair in that it offended established public policy, was immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to Plaintiff that was not outweighed by any countervailing benefits. Defendants leveraged their superior bargaining power, exclusive control over billing systems, and unilateral authority to suspend or terminate access to essential legal research services to pressure Plaintiff into paying amounts Defendants had previously acknowledged were not owed.

98.    Defendants' conduct was fraudulent in that it was likely to deceive reasonable members of the public, including attorneys and small law firms relying on representations regarding contract duration, billing accuracy, and service continuity when selecting and maintaining legal research providers.

99.   As part of this unfair and deceptive course of conduct, Defendants attempted to repudiate an official written zero-balance confirmation issued by their own Operations & Technology representative by attributing the confirmation to alleged "lost in translation" issues associated with overseas, non-native English-speaking personnel, thereby disavowing their own records and communications in order to evade responsibility and continue coercive billing and collection practices.

100.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff suffered injury in fact and lost money or property, including monies wrongfully obtained or sought to be obtained under false pretenses, loss of access to paid-for legal research services, out-of-pocket costs incurred in outsourcing legal research, disruption of ongoing litigation, and lost business opportunities.

101.   Defendants' unfair competition practices are ongoing and threaten to continue unless enjoined by this Court. Plaintiff seeks injunctive relief prohibiting Defendants from engaging in the unlawful, unfair, and fraudulent practices alleged herein, restitution of all monies wrongfully obtained through such practices, and all other equitable relief authorized by Business and Professions Code §§ 17203 and 17204.

102.   Plaintiff further seeks, if and to the extent authorized by law, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5, as this action enforces important public rights and confers a significant benefit on the public by deterring large legal-industry vendors from employing deceptive, coercive, and oppressive billing and collection practices against solo practitioners and small law firms.

**SEVENTH CAUSE OF ACTION**

**PROMISSORY ESTOPPEL**

***(Against All Defendants)***

103.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

Plaintiff pleads this cause of action in the alternative to Plaintiff's claims for breach of contract, fraudulent inducement, rescission, and reformation.

104.  Defendants, through their authorized representatives, made clear, definite, and unambiguous promises to Plaintiff concerning Plaintiff's Westlaw subscription and upgrade agreements. These promises included representations that Plaintiff could cancel his November 17, 2023 Westlaw subscription without penalty if he later joined a firm with existing legal research coverage; that the May 2025 upgrade would apply only to the remaining portion of the existing contract term and would not reset the term to a new multi-year commitment; and that all past-due balances and disputed charges would be waived.

105.  Defendants made these promises with the expectation and intent that Plaintiff would rely on them in deciding whether to enter into, continue, and upgrade his contractual relationship with Defendants, and in determining whether to maintain Westlaw access rather than seek alternative legal research arrangements.

106.  Plaintiff reasonably and foreseeably relied on Defendants' promises. In reliance on Defendants' representations, Plaintiff entered into the November 17, 2023 subscription agreement, executed the May 12, 2025 upgrade agreement, refrained from cancelling service, and structured his legal practice and litigation activities—including active Nevada litigation—around the expectation of continued Westlaw access on the promised terms.

107.  Defendants knew or should have known that Plaintiff's reliance was reasonable, particularly given Defendants' superior knowledge, control over contract terms and billing systems, and awareness of Plaintiff's status as a solo practitioner dependent on uninterrupted legal research access.

108.  Defendants failed to honor their promises. Instead, Defendants refused to permit penalty-free cancellation, imposed contractual terms inconsistent with their representations, reversed confirmed billing credits, asserted non-existent debts,

suspended and terminated Plaintiff's Westlaw access, and threatened collection activity despite prior assurances that no balance was owed.

109.   As a direct and proximate result of Defendants' failure to honor their promises, Plaintiff suffered substantial detriment, including increased financial obligations, loss of access to essential legal research services, costs incurred in outsourcing legal research, disruption of ongoing litigation, loss of professional opportunities, and other business and economic harm.
Injustice can be avoided only by enforcement of Defendants' promises.

110.   Plaintiff therefore seeks appropriate equitable relief, including enforcement of Defendants' promises, reliance damages, restitution, declaratory relief, and injunctive relief, as set forth in the Prayer for Relief.

**EIGHTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

***(28 U.S.C. §§ 2201–2202; Cal. Code Civ. Proc. § 1060)***

***(Against All Defendants)***

111.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

112.   An actual, present, and continuing controversy exists between Plaintiff and Defendants concerning the parties' respective rights, duties, and obligations under the November 17, 2023 Westlaw subscription agreement and the May 12, 2025 upgrade agreement, including the enforceability and legal effect of Defendants' representations, billing practices, account suspensions, terminations, and collection demands.

113.   Plaintiff contends, and Defendants dispute, that Defendants are not entitled to enforce contractual terms in a manner inconsistent with their representations concerning cancellation flexibility, contract term length, and waiver of past-due balances; that Defendants wrongfully reversed confirmed account credits;

21

COMPLAINT

1   and that Defendants improperly suspended and terminated Plaintiff's Westlaw access

2   and demanded payment of amounts not owed.

3       114.   Plaintiff further contends, and Defendants dispute, that Defendants'

4   conduct materially breached the parties' agreements, violated the implied covenant of

5   good faith and fair dealing, and rendered certain contractual provisions unenforceable

6   as applied, including provisions purportedly authorizing suspension, termination, or

7   collection based on non-existent or disputed debts.

8       115.   Judicial determination is necessary and appropriate to declare the parties'

9   respective rights and obligations and to resolve the ongoing uncertainty affecting

10  Plaintiff's access to essential legal research services. Plaintiff seeks declarations

11  including, but not limited to, the following:

12          (a) Plaintiff does not owe the amounts demanded by Defendants;

13          (b) Defendants lack the contractual or legal right to suspend or terminate

14  Plaintiff's     Westlaw     access     based     on     the     alleged     debts;

15          (c) Defendants may not enforce contractual terms in a manner

16  inconsistent with their representations and confirmed billing credits; and

17          (d) Defendants' ongoing billing, enforcement, and collection practices

18  toward Plaintiff are unlawful and improper.

19      116.   A declaration of the parties' rights and obligations will serve a useful and

20  practical purpose in clarifying and settling the legal relations at issue and will afford

21  relief from the uncertainty, insecurity, and controversy giving rise to this action.

22      117.   Plaintiff therefore seeks declaratory relief pursuant to 28 U.S.C. §§

23  2201–2202 and California Code of Civil Procedure § 1060, together with such further

24  relief as the Court deems just and proper, as set forth in the Prayer for Relief.

### NINTH CAUSE OF ACTION

### PRELIMINARY AND PERMANENT INJUNCTION

### *(Against All Defendants)*

COMPLAINT

118.   Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

119.   Defendants have engaged, and continue to engage, in unlawful, unfair, and oppressive conduct toward Plaintiff, including asserting non-existent or disputed debts, reversing confirmed billing credits, suspending and terminating Plaintiff's access to essential legal research services, and threatening coercive collection activity despite admitting that the amounts demanded were not owed.

120.   Plaintiff has a strong likelihood of success on the merits of his claims, including fraudulent inducement, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Rosenthal Fair Debt Collection Practices Act, violation of the Unfair Competition Law, promissory estoppel, and declaratory relief.   These    claims    arise    from Defendants' documented pattern of misrepresentations, billing reversals, wrongful suspensions and terminations, and collection threats, including conduct that contradicts Defendants' own written confirmations.

121.   Absent injunctive relief, Plaintiff will suffer immediate and irreparable harm for which there is no adequate remedy at law. Plaintiff is engaged in active litigation in Nevada, where he has been admitted pro hac vice and is required to prosecute matters requiring comprehensive and reliable Nevada legal research. Defendants' suspension and termination of   122.   Plaintiff's Westlaw access has already forced Plaintiff to outsource legal research and associate local Nevada counsel at substantial and ongoing cost, disrupted Plaintiff's ability to litigate effectively, and threatens continued prejudice to Plaintiff's clients and professional obligations.

123.   Plaintiff further faces irreparable harm from Defendants' ongoing threats of collection and enforcement for non-existent debts, including damage to Plaintiff's professional reputation, credit standing, and business relationships, harms that cannot be adequately remedied by monetary damages alone.

COMPLAINT

124.   The balance of equities sharply favors Plaintiff. Defendants will suffer no legitimate hardship from being enjoined from asserting debts not owed, threatening collection, or suspending or terminating Plaintiff's access to services based on disputed or invalid charges. By contrast, denial of injunctive relief will continue to cripple Plaintiff's legal practice, impair his ability to represent clients competently, and impose escalating and unnecessary costs on an individual practitioner with limited ability to absorb them.

125.   The public interest favors injunctive relief. Enjoining Defendants' conduct will deter deceptive, coercive, and oppressive practices by dominant legal-industry vendors against solo practitioners and small law firms who depend on accurate billing and reliable access to legal research tools to fulfill their professional and ethical duties.

126.   Plaintiff therefore seeks preliminary injunctive relief enjoining Defendants from, among other things:

(a) asserting, attempting to collect, or threatening to collect amounts not owed;

(b) suspending or terminating Plaintiff's access to Westlaw based on disputed or non-existent debts; and

(c) engaging in billing, enforcement, or collection practices inconsistent with Defendants' representations and confirmed account credits.

127.   Plaintiff further seeks permanent injunctive relief upon final judgment enjoining Defendants from continuing the unlawful, unfair, and fraudulent practices alleged herein, together with such other and further equitable relief as the Court deems just and proper, as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kevin D. Chaffin respectfully prays for judgment against Defendants, and each of them, as follows:

COMPLAINT

1.      For rescission and voiding of the November 17, 2023 Westlaw subscription agreement and the May 12, 2025 upgrade agreement based on Defendants' fraudulent inducement and related misconduct; or, in the alternative, for equitable relief requiring reinstatement of Plaintiff's Westlaw service on non-discriminatory terms, including restoration of all credits, discounts, promotions, and benefits previously represented, and prohibiting Defendants from engaging in retaliatory or discriminatory treatment in any future dealings with Plaintiff.

2.      For declaratory relief declaring that Plaintiff does not owe the amounts demanded by Defendants; that Defendants lacked the right to suspend or terminate service based on the alleged debts; and that Defendants' billing, enforcement, and collection practices toward Plaintiff were unlawful and improper.

3.      For compensatory damages according to proof at trial, including economic loss, consequential damages, outsourced legal research costs, business disruption, and lost professional opportunities, in an amount to be proven at trial.

4.      For punitive damages, to the extent permitted by law, in an amount sufficient to punish and deter the wrongful conduct proven at trial.

5.      For statutory damages and actual damages pursuant to the Rosenthal Fair Debt Collection Practices Act, including statutory damages of up to $1,000 per violation, together with actual damages as permitted by law.

6.      For restitution, and disgorgement where authorized, of all monies wrongfully obtained by Defendants through unlawful, unfair, and fraudulent business practices, pursuant to California Business and Professions Code §§ 17203 and 17204.

7.      For preliminary and permanent injunctive relief enjoining Defendants from:

a. asserting, attempting to collect, or threatening to collect amounts not owed;

b. threatening or pursuing collection activity on disputed or non-existent debts;

c. suspending or terminating Plaintiff's access to Westlaw based on such alleged debts;

25
COMPLAINT

d. engaging in retaliatory or discriminatory practices; and

e. failing to comply with Defendants' representations and confirmed billing credits.

8.    For attorneys' fees and costs pursuant to applicable statutes and doctrines, including but not limited to California Code of Civil Procedure § 1021.5 and California Civil Code § 1788.30.

9.    For pre-judgment and post-judgment interest as allowed by law.

10.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: December 31, 2025          SIDHU LAW, APC

By:    */s/ Peter Sidhu*
       Peter Sidhu Esq.
       Attorneys for Plaintiff
       KEVIN CHAFFIN

EXHIBITS

Exhibit A: November 17, 2023 Westlaw Order Form (Order ID Q-07627452)

Exhibit B: May 12, 2025 Westlaw Upgrade Order Form (Order ID Q-09861007)

Exhibit C: Additional Westlaw Contract Documentation and Records